IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WILLIAM SPORT<br>    10720 Caribbean Blvd Ste 101<br>    Cutler Bay, FL 33189-1242<br>        Plaintiff<br>  v.<br>JORDAN CAPPOLLA<br>    820 E Street SE<br>    Washington DC 20003<br>  and<br>WILBERT WASHINGTON II<br>    9990 Fairfax Blvd #200<br>    Fairfax VA 22030-1720<br>  and<br>CHADWICK WASHINGTON MORIARTY<br>    ELMORE & BUNN, PC<br>    9990 Fairfax Blvd #200<br>    Fairfax, VA 22030<br>        Defendants | Civil Action No. |

VERIFIED COMPLAINT FOR DAMAGES

NOW COMES Plaintiff William Sport, through undersigned counsel, and for his Verified Complaint states and alleges as follows:

1. Plaintiff William Sport is an individual residing and domiciled in the State of Florida.

2. Defendant Jordan Cappolla is, upon information and belief, an individual residing and domiciled in the District of Columbia.

3. Defendant Wilbert Washington II ("Washington") is, upon information and belief, an individual attorney residing and domiciled in the Commonwealth of Virginia, who regularly conducts business in the District of Columbia and is licensed to practice before this Court.

1

4. Defendant Chadwick Washington ("Firm") is a Virginia Professional Corporation and practice of law that regularly conducts business in the District of Columbia. Upon information and belief Defendant Washington is a shareholder in and corporate treasurer of the Firm.

5. JC, LLC ("Company") is a District of Columbia Limited Liability Company formerly operating a restaurant and bar known as "Tapatini's" ("Business") located at 711 Eighth Street SE, Washington DC 20002 ("Premises"). Upon information and belief Defendant Cappolla is the sole managing member of the Company.

6. Jurisdiction in this Court is appropriate pursuant to 28 U.S.C. Section 1332.

7. Venue is appropriate in this Court pursuant to 28 U.S.C. Section 1391(a).

## Factual Background

8. During late 2007 and early 2008, Defendant Cappolla entered into negotiations with Plaintiff through Plaintiff's agents for the contemplated sale of the Business.

9. Defendant Washington represented Defendant Cappolla in the negotiation and drafting of a purchase and sale Agreement for sale of the Business ("Agreement").

10. During the course of negotiations, Defendant Cappolla repeatedly represented to Plaintiff and his agents that there were no outstanding liens or encumbrances on the Business assets, and that the Company had in force and in good standing a long-term lease for the Premises on very favorable terms and conditions.

11. During the same negotiations, Defendant Washington specifically and independently made the same representations of fact as to the business assets and as to the good standing of the Company's lease for the Premises.

12. In reliance on these representations, Plaintiff agreed to purchase from Defendant Cappolla all of the outstanding membership interests and acquire total ownership of the Company for a total purchase price of $300,000.00 plus transfer of title to an automobile.

13. Plaintiff and Cappolla executed the Agreement on or about February 6, 2008.

14. The Agreement provided, *inter alia*, that Cappolla would transfer a 49% membership interest in the Company upon payment of the $100,000.00 deposit on the Agreement, and the remainder of the Company's ownership upon final payment under the Agreement.

15. On or about February 6, 2008 and pursuant to the Agreement, Plaintiff tendered to Cappolla at Washington's instruction an initial deposit of $100,000.00 to be applied to the purchase of the Company from Cappolla.

16. Rather than holding this money in escrow pending closing on the transfer of the business interest, Defendant Washington instead caused the initial $100,000.00 deposit on the sale to be disbursed directly to Cappolla.

17. Pursuant to the Agreement, Cappolla was supposed to transfer 49% membership interest in the Company in exchange for the first payment of $100,000.00 by Plaintiff.

18. Upon tender of the first $100,000.00 payment, Defendant Washington was obligated to prepare and cause to be executed documentation effecting transfer of the 49% membership interest from Cappolla to Plaintiff.

19. Defendant Washington failed to cause such documentation to be prepared, executed, or to otherwise effect any transfer of ownership from Capolla to Plaintiff.

20. Defendant Cappolla failed to otherwise effect any such transfer of ownership interest to Plaintiff.

21. As of the time of the second payment due under the Agreement, Plaintiff remained unaware of the failure of Cappolla and Washington to transfer the membership interest as required, or of the failure of representations and warranties made by Cappolla under the Agreement.

22. Pursuant to terms of the Agreement and upon the representations and warranties of Cappolla and Washington, Plaintiff tendered the second $100,00.00 payment on or about March 6, 2008.

23. Rather than holding this money in escrow pending transfer of the business interest, Defendant Washington instead caused Plaintiff's second $100,000.00 payment on the sale to be disbursed directly to Cappolla.

24. No transfer of any interest in the Company was ever made to Plaintiff.

25. The Agreement drafted by Washington contained, *inter alia*, specific warranties and representations concerning the state of the business assets and leasehold interests of the Company.

26. These representations and warranties included, *inter alia*:

    a. That there were no liens and encumbrances on the assets of the Company

    b. That Cappolla had provided Plaintiff with copies of all leases and documents related to the leasehold interest in the Premises.

    c. That the transfer of membership interest in the Company would not violate any law or any agreement to which the Company or Cappolla were parties.

27. In reliance on the provisions of the Agreement and the representations of Cappolla and Washington, Plaintiff commenced an extensive renovation of the Premises at Plaintiff's sole cost and expense of hundreds of thousands of dollars, and paid additional sums to vendors and the landlord of the Company.

28. In point of fact, as of the date of the Agreement, there were significant liens and encumbrances upon the assets of the Company, as well as legal impediments to the transfer of interest in the Company of which both Washington and Cappolla were personally aware but failed to disclose to Plaintiff, and which both Washington and Cappolla specifically represented to Plaintiff did not exist.

29. These undisclosed liens and legal impediments to transfer included, but are not limited to:

    a. A tax lien owed to the District of Columbia government for unpaid sales and use taxes, interest and penalties that the District of Columbia asserts is almost $300,000.00.

    b. Unpaid rent, fees, and other charges due to the landlord for the Company's leased Premises, for which Landlord either had already or was soon to commence legal proceedings for possession of the Premises.

    c. Statutory and regulatory restrictions on the Company's liquor license, which make it a violation of law to transfer more than 49% of the Company's ownership interest without advance regulatory approval of the District of Columbia Alcoholic Beverage Regulatory Administration ("ABRA").

    d. Statutory and regulatory restrictions on the Company's liquor license, which make it impossible to transfer more than 49% of the Company's ownership interest while there remain unpaid District of Columbia taxes.

30. By letter dated April 17, 2008, Plaintiff's counsel informed Cappolla and Washington that Plaintiff had recently learned about the previously-undisclosed litigation for possession of the Premises.

31. That civil action against the Company, *Frank Emmett Real Estate v. JC LLC*, 2008 LTB 000167 (D.C. Superior) ("Litigation") alleged that the existing lease agreement for the business premises has been terminated due to the Company's default, and sought immediate possession and control of the leasehold interests on the part of the landlord.

32. Defendant Washington was counsel of record for Defendant Cappolla in the Litigation, and as such had personal knowledge of both the Litigation and the false nature of representations and warranties previously made to Plaintiff.

33. Pursuant to terms of the Agreement, Plaintiff notified Cappolla in writing that he must correct this breach of the Agreement as to the leasehold interest within 30 days, since it was one "that can be corrected through payment of money or through some other proceeding or settlement."

34. Notwithstanding this demand and notice, Cappolla failed to correct the breach of warranty and representation, and eventually judgment for possession in the Litigation was entered in favor of the Landlord. The Company's right to occupy the Premises was terminated and a writ of eviction was issued.

35. Plaintiff subsequently learned through independent investigation that the Company has a $300,000.00 unpaid tax liability to the District of Columbia.

36. Under the terms of the Agreement, in addition to any other remedies available to Plaintiff, upon failure to cure liens and encumbrances to the Company's assets and failure to convey clear leasehold interest, Cappolla is required to return to Plaintiff his $200,000.00 deposit.

37. Cappolla has failed to refund the $200,000.00 deposit.

38. Because Defendant Washington directed the $200,000.00 deposit to Cappolla prior to transfer of membership interests in the Company, the money is not in escrow or otherwise in control of any person or entity from whom Plaintiff can seek its return.

39. The failure to maintain such funds in escrow pending transfer of interests in the Company is contrary to prudent and standard practice in the industry with respect to transfer of interests in a business entity.

### Count One – Breach of Contract
### Defendant Cappolla

40. Plaintiff incorporates by reference the allegations in the preceding paragraphs as if set forth fully herein.

41. By the actions and inactions set forth above, Defendant Coppolla breached his contractual obligations to Plaintiff under the Agreement, including but not limited to:

    a. The obligation to transfer to Plaintiff ownership interest in the Company as specified in the Agreement and as of the date specified in the Agreement.

    b. The obligation to cause the Company's assets to be free and clear of liens and encumbrances.

    c. The obligation to clear all liens and encumbrances from the Company's assets once notified of the demand to do so pursuant to the Agreement and

    d. The obligation upon default to refund to Plaintiff his $200,000.00 deposit towards the purchase price of the Company.

42. Plaintiff has been damaged by this breach of contract in an amount to be determined at trial but not less than $750,000.00.

### Count Two – Unjust Enrichment
### Defendant Cappolla

43. Plaintiff incorporates by reference the allegations in the preceding paragraphs as if set forth fully herein.

44. By his receipt of Plaintiff's $200,000.00 in deposits, for which Plaintiff received no membership interest or other benefit, and his failure to return same to Plaintiff following breach of the Agreement and demand therefore, Defendant Cappolla has been unjustly enriched.

45. Plaintiff has been damaged by this unjust enrichment in an amount to be determined at trial, but not less than $200,000.00.

## Count Three – Fraud in the Inducement
## Defendants Cappolla and Washington

46. Plaintiff incorporates by reference the allegations in the preceding paragraphs as if set forth fully herein.

47. Defendant Cappolla had actual knowledge before the Agreement was presented to Plaintiff for execution that the representations in the Agreement as to liens and encumbrances were false.

48. Defendant Cappolla had actual knowledge before Cappolla executed the Agreement that the representations in the Agreement as to liens and encumbrances were false.

49. Defendant Washington had actual knowledge before and when he drafted and presented to Plaintiff the Agreement that the representations in the Agreement as to liens and encumbrances were false.

50. Defendant Washington had actual knowledge before Cappolla and Plaintiff executed the Agreement that the representations in the Agreement as to liens and encumbrances were false.

51. Notwithstanding this knowledge, Defendants Cappolla and Washington each specifically represented to Plaintiff and to Plaintiff's agent that there were no liens or encumbrances on the assets of the Company.

52. As of the date the Agreement was presented to Plaintiff, Defendant Washington had actual knowledge that the lease for the Company's business premises was in default, and that the landlord for same premises either had or intended to bring suit for possession of the business premises.

53. As of the date the Agreement was executed by Cappolla, Defendant Washington had actual knowledge that the lease for the Company's business premises was in default, and that the landlord for same premises either had or intended to bring suit for possession of the business premises.

54. As of the date the Agreement was presented to Plaintiff, Defendant Cappolla had actual knowledge that the lease for the Company's business premises was in default, and that the landlord for same premises either had or intended to bring suit for possession of the business premises.

55. As of the date the Agreement was executed by Cappolla, Defendant Cappolla had actual knowledge that the lease for the Company's business premises was in default, and that the landlord for same premises either had or intended to bring the Litigation for possession of the business premises.

56. Notwithstanding this knowledge, Defendants Cappolla and Washington each specifically represented to Plaintiff and Plaintiff's agent that the lease was in good standing and not in default.

57. Upon information and belief, the monies paid by Plaintiff under the Agreement were intended to and were, in fact, used in whole or part to pay Cappolla's outstanding debts to Defendant Washington and the Firm.

58. Defendant Cappolla made specific representations to Plaintiff that based upon his personal knowledge (a) there were no liens and encumbrances on the Company's assets; (b) the lease was not in default and was in good standing; and (c) Defendant Coppola had sufficient liquid assets to resolve any issues associated with the sale of interest in the Company, should such issues arise.

59. These statements by Cappolla were knowingly false when made, and were made by Washington for the purpose of inducing Plaintiff to enter into the Agreement and to pay monies to Defendant Cappolla.

60. Defendant Washington made specific representations to Plaintiff that based upon his personal knowledge (a) there were no liens and encumbrances on the Company's assets; (b) the lease was not in default and was in good standing; and (c) Defendant Cappolla had sufficient liquid assets to resolve any issues associated with the sale of interest in the Company, should such issues arise.

61. These statements by Washington were knowingly false when made, and were made by Washington for the purpose of inducing Plaintiff to enter into the Agreement and to pay monies to Defendant Cappolla, which in turn would be used to satisfy Cappolla's substantial legal fees already due to Washington and the Firm.

62. Plaintiff reasonably relied on the false representations of Cappolla and Washington, to Plaintiff's detriment.

63. The false representations of Cappolla and Washington were material to the contemplated transaction, and were material inducements for Plaintiff to enter into the Agreement.

64. Were it not for the false representations of Cappolla and Washington, Plaintiff would not have entered into the Agreement on the terms and conditions set forth therein, and would not have paid $200,000.00 to Cappolla under the Agreement.

65. Plaintiff has been damaged by this fraudulent inducement to contract in an amount to be determined at trial, but not less than $750,000.00.

### Count Four- Fraud and Misrepresentation
### Cappolla and Washington

66. Plaintiff incorporates by reference the allegations in the preceding paragraphs as if set forth fully herein.

67. Defendant Cappolla made specific representations to Plaintiff, both verbally and as representations and warranties in the Agreement, that based upon his personal knowledge (a) there were no liens and encumbrances on the Company's assets; (b) the lease was not in default and was in good standing; and (c) Defendant Cappolla had sufficient liquid assets to resolve any issues associated with the sale of interest in the Company, should such issues arise.

68. These statements by Cappolla and the related representations and warranties made by Cappolla in the Agreement, were knowingly false when made, and were made by Cappolla for the purpose of inducing Plaintiff to pay monies to Defendant Cappolla.

69. Defendant Washington made specific representations to Plaintiff that based upon his personal knowledge (a) there were no liens and encumbrances on the Company's assets; (b) the lease was not in default and was in good standing; and (c) Defendant Cappolla had sufficient liquid assets to resolve any issues associated with the sale of interest in the Company, should such issues arise.

70. These statements by Washington were knowingly false when made, and were made by Washington for the purpose of inducing Plaintiff to pay monies to Defendant Cappolla.

71. Plaintiff reasonably relied on the false representations of Cappolla and Washington, to Plaintiff's detriment.

72. The false representations of Cappolla and Washington were material to the contemplated transaction, and were material inducements for Plaintiff pay monies to Cappolla under the Agreement.

73. Were it not for the false representations of Cappolla and Washington, Plaintiff would not have entered into the Agreement on the terms and conditions set forth therein, would not have paid $200,000.00 to Cappolla under the Agreement, and would not have expended significant sums of money in the renovation and upkeep of the Company's business premises nor paid recurring and operating expenses on behalf of the Company.

74. Plaintiff has been damaged by this fraud and/or misrepresentation in an amount to be determined at trial, but not less than $750,000.00.

### Count Five – Professional Negligence
### Washington and the Firm

75. Plaintiff incorporates by reference the allegations in the preceding paragraphs as if set forth fully herein.

76. Defendants Washington and Firm had an obligation to Plaintiff to take Plaintiff's payments into escrow and not to disburse them to Defendant Cappolla until such time as membership interest in the Company was transferred to Plaintiff.

77. Defendants Washington and the Firm negligently arranged for the Plaintiff's payments to be disbursed directly to Cappolla, notwithstanding the fact that Washington and the Firm knew or should have known that the representations

and warranties were false and not cured, and that the membership interests had not been transferred. This behavior was contrary to the duty and standard of care ordinarily employed by attorneys effecting the sale or transfer of interest in the ownership of a business.

78. Defendants Washington and the Firm either knew or should have known that provisions of the Agreement they drafted were materially incorrect and/or in violation of District of Columbia law.

79. Defendants Washington and the Firm negligently failed to advise or cause the Company or Cappolla to comply with District of Columbia law related to the ABRA license or to draft the Agreement in such a way as to disclose and provide for compliance with ABRA law and regulations.

80. Specifically, and without limitation, Washington and the Firm either knew or should have known that more than 49% of membership interest in the Company, as provided for in the Agreement, would be a violation of District of Columbia law unless and until discretionary approval was sought and obtained from ABRA, yet failed to provide for this in the Agreement or otherwise effect the necessary filings with governmental authorities.

81. These actions and inactions constituted professional negligence and violation of duty owed by Washington and the Firm to Plaintiff.

82. Plaintiff has been damaged by this negligence in an amount to be determined at trial, but not less than $250,000.00.

## Count Six – Breach of Fiduciary Duty
### Washington and the Firm

83. Plaintiff incorporates by reference the allegations in the preceding paragraphs as if set forth fully herein.

84. Defendants Washington and the Firm had actual knowledge that the representations and warranties contained in the Agreement were materially false.

85. Defendants Washington and the Firm had a duty to disclose this information to Plaintiff, but instead intentionally concealed from Plaintiff the facts of the tax liens and Litigation and represented the exact contrary to Plaintiff.

86. Defendants Washington and the Firm owed a fiduciary duty to Plaintiff not to cause or effect disbursement of the $200,000.00 deposit to Cappolla unless and until the conditions of the representations, warranties, and transfer of membership interest in the Company were satisfied.

87. Defendants Washington and the Firm violated this fiduciary duty to Plaintiff by arranging for direct payment of the $200,000.00 deposit funds to Cappolla despite the fact Washington and the Firm knew that the conditions had not been satisfied and could not be satisfied by Cappolla.

88. Upon information and belief, at least part of the amounts paid by Plaintiff to Defendant Cappolla under the Agreement were utilized or promised by Cappolla to be utilized to pay Washington and/or the Firm for its legal fees due from Cappolla and/or the Company.

89. Washington and/or the Firm stood to benefit and/or actually benefitted financially from the Agreement and from the payments made by Plaintiff under the Agreement.

90. Washington and/or the Firm stood to benefit and/or actually benefitted financially from the fraudulent representations made by Washington and by Cappolla with respect to the Agreement.

91. These actions and inactions constituted a violation of fiduciary duty owed by Washington and the Firm to Plaintiff.

92. Plaintiff has been damaged by this violation of fiduciary duty in an amount to be determined at trial, but not less than $250,000.00.

WHEREFORE Plaintiff demands judgment against Defendant, as follows:

   a. As to Count One (Breach of Contract) against Defendant Cappolla in an amount to be determined at trial, but not less than $750,000.00.

   b. As to Count Two (Unjust Enrichment) against Defendant Cappolla in an amount to be determined at trial, but not less than $250,000.00.

   c. As to Count Three (Fraud in the Inducement) against Defendants Cappolla and Washington, jointly and severally, in an amount to be determined at trial, but not less than $750,000.00.

   d. As to Count Four (Fraud and Misrepresentation) against Defendants Cappolla and Washington, jointly and severally, in an amount to be determined at trial, but not less than $750,000.00, together with punitive and exemplary damages in an amount of not less than an additional $750,000.00.

e. As to Count Five (Professional Negligence) against Defendants Washington and the Firm in an amount to be determined at trial, but not less than $750,000.00.

f. As to Count Six (Breach of Fiduciary Duty) against Defendants Washington and the Firm in an amount to be determined at trial, but not less than $750,000.00.

**Jury Demand**

A jury is demanded as to all issues so triable.

Respectfully Submitted:

WILLIAM A. SPORT
By Counsel

James M. Loots (384763)
LAW OFFICES OF JAMES M. LOOTS PC
236 Massachusetts Ave. NE #204
Washington DC 20002
(202) 536-56560
Facsimile: (202) 315-3515
jloots@lootslaw.com

## VERIFICATION

ss: Dade County
   Florida

WILLIAM A. SPORT, being duly sworn, hereby verifies that he has read the foregoing Verified Complaint, and that to the best of his knowledge and belief the factual allegations set forth in the Verified Complaint are true and correct, except for those factual allegations specified upon information and belief, and as to those allegations he believes them to be true.

_____
William A. Sport

Signed and sworn before me this 15 day of July 2008

_____
Notary Public
My Commission expires

NOTARY PUBLIC-STATE OF FLORIDA
Andrea D. Gentile
Commission # DD461820
Expires: SEP. 14, 2009
Bonded Thru Atlantic Bonding Co., Inc.

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

## I (a) PLAINTIFFS

William Sport

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Dade County FL
(EXCEPT IN U.S. PLAINTIFF CASES)

## DEFENDANTS

Jordan Cappolla
Wilbert Washington II
Chardwick Washington Moriarty Elmore & Bunn PC

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  District of Columbia
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

James M Loots
236 Massachusetts Ave NE #204
Washington DC 20002

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
○ 2 U.S. Government Defendant
○ 3 Federal Question (U.S. Government Not a Party)
● 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ● 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ● 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ○ A. Antitrust
☐ 410 Antitrust

### ○ B. Personal Injury/Malpractice
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ○ C. Administrative Agency Review
☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ○ E. General Civil (Other)   OR   ○ F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☒ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ● 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
18 USC 1332 (Diversity) Breach of Contract, Fraud, Breach of Fiduciary Duty

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐   DEMAND $ 750,000.00   Check YES only if demanded in complaint
JURY DEMAND: YES ☒ NO ☐

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE 07/17/08   SIGNATURE OF ATTORNEY OF RECORD

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.